**Porter WILLIAMS, and all those similarly situated, Appellant,**

v.

**CITY OF SIOUX FALLS, a Municipal Corporation; Rick Knobe, Mayor; Harold Wingler, Commissioner; Richard Peterson, Commissioner; Harold Mostrom, Director, Department of Community Development; Michael Crane, Former Assistant Director, Department of Community Development; Lyle Graff, former employee, Department of Community Development; individually and in their official capacities, Appellees.**

**No. 87–5085.**

United States Court of Appeals, Eighth Circuit.

Submitted Dec. 15, 1987.

Decided May 16, 1988.

---

Clyde A. Christian, Omaha, Neb., for appellant.

Richard O. Gregerson, Sioux Falls, S.D., for appellees.

Before ARNOLD, FAGG, and BEAM, Circuit Judges.

BEAM, Circuit Judge.

Porter Williams appeals from a final judgment dismissing this action against the City of Sioux Falls, South Dakota, and several city officials. Williams, a black contractor, alleges that he is the victim of racial discrimination resulting from activities carried out in the City's construction contract letting process. The district court[1] dismissed the case, finding that Williams had failed to establish a case of intentional discrimination against himself or, more generally, against a certified class of minority contractors. After unsuccessfully seeking a new trial, Williams appeals, charging that the district court erred in overruling the motion for a new trial and in entering judgment in favor of the defendants. Upon a review of the record and the arguments of the parties, we affirm.

## A. Background

Plaintiff Williams asserts three claims, each of which was considered and dismissed by the district court following a four day nonjury trial. The first, brought pursuant to 42 U.S.C. §§ 1981, 1983 and 2000d, alleges that the City and certain city officials discriminated against Williams during the bidding process on a demolition contract known as the "Beadle Project," which project contract was awarded by the City in November of 1980. Plaintiff's second claim, also brought pursuant to sections 1981, 1983 and 2000d, alleges that the defendants have engaged in a pattern and practice of discrimination against all minority contractors through the City's failure to observe minority business enterprise

1. The Honorable John B. Jones, United States District Judge for the District of South Dakota.

(MBE) guidelines. These guidelines are imposed upon the City by the federal government because the City receives federal funds. The district court certified a class of minority contractors consisting of all minority contractors domiciled in South Dakota and those additional minority contractors not domiciled in South Dakota who had become eligible on or before July 1, 1984, to participate in the Sioux Falls MBE program.[2] Finally, the plaintiff asserts that the City's alleged violation of MBE regulations is actionable under 42 U.S.C. § 1983, as a deprivation of rights secured by federal law. We address each of these claims separately.

B. Individual Claim—Beadle Project

■ The district court correctly recognized that under plaintiff's individual claim, each theory of recovery is viable only if the City intentionally treated the plaintiff less favorably because of his race. *See Guardians Ass'n v. Civil Serv. Comm'n,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983); *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). The court employed the traditional analysis utilized to decide questions of intentional discrimination, asking first whether the plaintiff had established a prima facie case. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Craik v. Minnesota State Univ. Bd.,* 731 F.2d 465 (8th Cir.1984). Because the court found that the plaintiff had not established a prima facie case, it was unnecessary for the court to proceed with the remaining steps of the *McDonnell Douglas* analysis.[3] The record supports the district court's conclusion.

The Beadle demolition project was divided by the City into five phases, each of which was to be bid separately. Williams

was interested in submitting a bid on phase two, which phase involved the removal of a garage structure and site clearance. The bid specifications provided that the job should be completed in 30 days, with a per-day penalty assessed for each additional day necessary for final performance.

In light of his relative inexperience with the bidding process, Williams sought assistance from the City in the preparation of his bid on phase two. Several city officials provided Williams with a significant amount of technical and clerical help, enabling him to submit a bid of $5,000 on the project. Williams' bid was quite reasonable, falling midway between the bids of most other contractors, which proposals sought from $3,500 to $7,680 to complete the work. However, the project was awarded to General Excavating Company on a bid of $1.00. General Excavating planned to move the garage structure intact to another location for use as a workshop, and apparently concluded that the salvage value of the building was sufficient consideration for the building removal and site clearance.

■ Williams alleges that he was denied a fair opportunity to submit a competitive bid on this project because the City failed to inform him of the potential for obtaining a stripping order. A stripping order gives a demolition contractor extra time to enter upon the premises to remove objects the contractor wishes to sell as salvage. The City issues a stripping order only when there is an unexpected delay in an earlier phase of a project which, in turn, allows additional time for completion of demolition. The City does not dispute that it failed to inform Williams about the potential for receiving a stripping order on the Beadle project. The City insists, however, that it is unnecessary to discuss stripping

---

**2.** The class was certified pursuant to Fed.R.Civ. P. 23(b)(2), entitling the plaintiff solely to injunctive relief against the City.

**3.** If a plaintiff succeeds in establishing a prima facie case, the burden of production shifts to the defendant to articulate a legitimate nondiscriminatory reason for the action. If the defendant carries this burden, the plaintiff then must prove by a preponderance of the evidence that

the defendant's explanation is a pretext for discrimination. *Craik,* 731 F.2d at 469. The ultimate factual inquiry to be made, however, is whether the defendant did in fact intentionally discriminate against the plaintiff. *U.S. Postal Serv. Bd. of Governors v. Aikens,* 460 U.S. 711, 715, 103 S.Ct. 1478, 1481–82, 75 L.Ed.2d 403 (1983).

orders with contractors, and that it would be unwise for any contractor to rely upon such a fortuitous factor in arriving at the amount of a bid.

The district court found that the City treated Williams the same as it did every other contractor with regard to advice about stripping orders. In fact, the district court concluded that the City provided the plaintiff with several hours of extra assistance which it did not give to nonminority contractors interested in the project. The district court said that even if Williams had known he might obtain a stripping order, there was no evidence that Williams would have bid less than the $1.00 proposed by General Excavating. Unlike General Excavating, Williams did not have an alternate use for the building which was to be removed.

We are unable to say that these findings are clearly erroneous. The district court considered all the evidence and thoroughly analyzed plaintiff's claim. The conclusion that the City did not intentionally deceive the plaintiff because of his race is supported by the evidence, and shall be upheld. *See Walker v. Int'l Business Machines,* 698 F.2d 959, 962 (8th Cir.1983).

## C. Class Claim—MBE Regulations

The class claim alleges that the City has engaged in a pattern and practice of intentional discrimination against minority contractors by disregarding federal and local MBE regulations. To establish a prima facie case of class-wide discrimination, the plaintiff must prove by a preponderance of the evidence that the defendants "engaged in a pattern and practice of unlawful discrimination in various [City] policies, that 'discrimination was the [City's] standard operating procedure—the regular rather than the unusual practice.'" *Craik,* 731 F.2d at 470 (quoting *Int'l Bhd. of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396 (1977)).

The district court was presented with evidence concerning most, if not all, of the construction contracts entered into by the City during the late 1970's and early 1980's. Many of these projects were funded, in whole or in part, by financial assistance grants from various federal agencies. These federal funds were often awarded pursuant to regulations requiring grant recipients to abide by affirmative action guidelines. The specific regulations at issue here require that recipients of construction project funds establish, among other things, participation goals and notice procedures to aid minority contractors. *See, e.g.,* 49 C.F.R. §§ 23.1–.87.

The plaintiff's principal witness in support of the class claim was Jewel Brown, a former MBE compliance officer for the City. Mr. Brown testified to several instances where MBE participation goals and notice requirements were allegedly not fulfilled. The City's principal witness, Gloria Werner, the current MBE compliance officer, examined each of the same projects discussed by Mr. Brown and explained why MBE requirements either were not applicable to the project or were actually satisfied by the City. From this testimony, the district court noted two instances in which city contractors failed to fully comply with MBE requirements and the City failed to take adequate corrective action. In one case, federal funding was revoked as a result of noncompliance.

Upon consideration of all the evidence, the district court found that the plaintiff had failed to prove a pattern and practice of intentional discrimination. We agree with the district court's analysis. The alleged failure to place minority contractors in a preferred position, standing alone, is insufficient to establish a prima facie case of class-based discrimination. *See Furnco Const. Corp. v. Waters,* 438 U.S. 567, 577–78, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978) (Title VII does not impose a duty to adopt a hiring procedure which maximizes hiring of minority employees). While evidence of a failure to implement an affirmative action plan can amount to circumstantial evidence of discriminatory intent, it does not, by itself, support a finding that the City treated minorities in a less than equal manner because of race. The district court properly treated the testimony regarding the City's

compliance with MBE regulations as one parcel of evidence to be considered in evaluating the more relevant inquiry—whether the City engaged in a pattern and practice of discrimination against minority contractors. *See Emanuel v. Marsh,* 828 F.2d 438, 444 (8th Cir.1987); *Craik,* 731 F.2d at 472.

■ We have reviewed the record, and, again, we cannot say that the district court's conclusion in this regard was clearly erroneous. While there was some evidence in support of the plaintiff's position, the record as a whole lends little credence to a finding of discriminatory intent. We agree with the district court that the City, in general, enacted MBE ordinances broader than those required by federal law, funded its programs adequately, and recruited qualified personnel to oversee and operate the programs. It is regrettable that the City may have failed to properly advance the interests of minority contractors in every instance. However, such failures do not, in this case, establish a case of intentional discrimination.[4]

D. Conclusion

We have examined plaintiff's additional assignments of error, and find each to be without merit. In this regard, any violations of MBE regulations that occurred here were insignificant and unlikely to occur again, thus affording no proper basis for relief. For this reason, it is not necessary to reach the question of whether violations of the MBE regulations are actionable under 42 U.S.C. § 1983. The decision of the district court is affirmed.

---

4. The plaintiff argues that the district court was bound by the doctrines of res judicata and collateral estoppel and, thus, was required to find that the City discriminated against minority contractors. Plaintiff relies on various administrative determinations issued by such authorities as the Sioux Falls Human Relations Commission and the United States Department of Housing and Urban Development, which determinations were decided adverse to the City. Not only were these administrative inquiries aimed at issues other than a finding of actual discrimination (for example, the Sioux Falls Human Relations Commission issued only a finding of probable cause), but the findings were all issued without the benefit of any type of adversarial proceeding. While certainly relevant to this dispute, the administrative findings relied on by the plaintiff are without preclusive effect. *See Anthan v. Professional Air Traffic Controllers Org.,* 672 F.2d 706, 709–11 (8th Cir.1982); *United States v. Karlen,* 645 F.2d 635, 639 (8th Cir.1981).