**Alice FREE, Plaintiff, Appellant,**

v.

**Moon LANDRIEU, et al., Defendants, Appellees.**

No. 81–1388.

United States Court of Appeals, First Circuit.

Argued Oct. 9, 1981.

Decided Dec. 8, 1981.

Robert M. Sabel, Newport, R. I., for plaintiff, appellant.

Robert L. Gammell, Asst. U. S. Atty., Providence, R. I., with whom Paul F. Murray, U. S. Atty., Providence, R. I., and Sheila H. Mondshein, Atty.-Advisor, U. S. Dept. of Housing & Urban Development, Newton, Mass., were on brief, for defendants, appellees.

Before BOWNES and BREYER, Circuit Judges, and WYZANSKI,* Senior District Judge.

WYZANSKI, Senior District Judge.

On April 1, 1980 the plaintiff, the holder of a Certificate of Family Participation under the Section 8 Existing Housing Program[1] filed against the Secretary of the Department of Housing and Urban Development [HUD] and the Director of the Rhode Island Department of Community Affairs [RIDCA] a complaint seeking a declaratory judgment that the December 29, 1978[2] amendment to 24 C.F.R. § 882.108(a)(1) is invalid, and praying for injunctive relief.

On June 2, 1980 the defendants filed a motion to dismiss the complaint on the ground that it had become moot since the commencement of the action. On April 3, 1981 the district court granted the motion

and dismissed the action, and the plaintiff appealed.

*The Section 8 Existing Housing Program*

In 1974 Congress established the Section 8 Existing Housing Program. *See* footnote 1 *supra.* HUD adopted for that program regulations set forth in 24 C.F.R. Part 882. Under that program, RIDCA is a local Public Housing Agency [PHA], to which HUD contributes funds.

Upon application to a PHA, an eligible low-income family may receive a Certificate of Family Participation. The certificate may be used with respect to any landlord or premises. As a certificate-holder, the family may seek a private landlord who is willing to participate in the program. After the landlord and the certificate-holder have agreed on a proposed lease, and the PHA has given its approval,[3] the certificate-holder and the landlord execute the lease, and the PHA and the landlord execute a corresponding Housing Assistance Payments [HAP] contract. Thus, in a completed Section 8 transaction there are two documents: a *lease* between the certificate-holder-tenant and the landlord, and a *contract* between the landlord and a PHA.

In the contract, but not in the lease, appears the term "contract rents," which is the subject of the challenged regulation. The landlord and the PHA fill in the space allotted for "contract rents" with figures identical with the rental obligations of the tenant under his lease from the landlord. The contract provides that the PHA will pay the landlord a stated part of those "contract rents." That provision practical-

---

* Of the District of Massachusetts, sitting by designation.

1. The Section 8 Existing Housing Program was established by Title II § 201(a) of the Housing and Community Development Act of 1974, 88 Stat. 633, 653, 662–666, amending § 8 of the United States Housing Act of 1937. *See* 42 U.S.C. § 1437f.

2. In her complaint and her brief, the plaintiff refers not to December 29, 1978 but to October 25, 1978 as the date when the Secretary of HUD issued the challenged amendment to 24

C.F.R. § 882.108. That December 29, 1978 is the correct date is shown by 43 F.R. 61246, 61249–50 (December 29, 1978).

3. Of course, to make a lease the certificate-holder is not required to secure anyone's approval. However, unless he does get approval of the lease a PHA will not make a contract with the landlord under which the PHA will pay part of the tenant's rent. Likewise, the landlord is, of course, free not to make a lease. However, unless the PHA has approved a lease, it will not enter into a contract with the landlord to pay the tenant's rent under that lease.

ly, although not legally,[4] relieves the tenant (who is not a party to, but only an intended beneficiary of, the contract) of part but not all of his rental obligations to the landlord.

The Section 8 program does not require that a lease shall have a renewal provision.

Before the effective date of the December 29, 1978 amendment,[5] 24 C.F.R. § 882.-108(a)(1) permitted the landlord on "any anniversary date of the lease" to apply for an upward adjustment of the *contract rent* "not to exceed the percentage of change in the applicable published *Existing Housing Fair Market Rent.*" (Emphasis added.)

However, the December 29, 1978 amendment,[6] effective January 29, 1979, provided that "[f]or contracts entered into after Sep-

tember 1978 an annual adjustment as of any anniversary date of the lease [is] not to exceed the applicable Section 8 *Annual Adjustment Factor.*" (Emphasis added.)

### The Complaint

Simply stated,[7] the complaint in effect alleges that the plaintiff as the holder of a Certificate of Family Participation had an annual lease of a unit at 10 Kilbourn Court, Newport, for a year beginning March 1, 1979 at a monthly rate of $161, which RIDCA and HUD had approved; that in connection with that approved lease, RIDCA and the landlord had entered into an HAP contract pursuant to which RIDCA paid the landlord on account of her lease $158 each

---

**4.** The lease between the landlord and the tenant does not refer to the contract; so legally the tenant remains liable to the landlord for the whole rent.

**5.** Before the December 29, 1978 amendment, § 882.108 read:

(a) Contract rents shall be adjusted as provided in paragraphs (a)(1) and (2) of this section upon request to the PHA by the Owner, provided that the unit is in Decent, Safe and Sanitary condition and that the Owner is otherwise in compliance with the terms of the Lease. Subject to the foregoing and the provisions of § 882.106, adjustments of Contract Rents shall be as follows:

(1) *Annual Adjustments.* An adjustment as of any anniversary date of the Lease not to exceed the percentage of change in the applicable published Existing Housing Fair Market Rent. . . .

**6.** After the effective date of the December 29, 1978 amendment, § 882.108 read:

(a) Contract rents shall be adjusted as provided in paragraphs (a)(1) and (2) of this section upon request to the PHA by the owner, provided that the unit is in Decent, Safe and Sanitary condition and the owner is otherwise in compliance with the terms of the Lease. Subject to the foregoing and the provisions of § 882.106 . . . adjustments to Contract Rents shall be as follows:

(1) *Annual Adjustments*

For Contracts entered into after September 1978 an annual adjustment as of any anniversary date of the lease not to exceed the applicable Section 8 Annual Adjustment Factor (24 C.F.R. 888) most recently published by HUD in the *Federal Register.*

**7.** The text of the complaint states that: On February 19, 1979 "Plaintiff entered a rental agreement with Seacoast Enterprises to lease

the premises known as 10 Kilbourn Court, Newport. The lease was for a one year term commencing March 1, 1979." "On or about March 1, 1980 Plaintiff's Section 8 lease expired, but said lease was extended for one month by agreement to April 1, 1980." "Plaintiff sought to have her Section 8 lease renewed for an additional year and her landlord . . . was agreeable so long as he would be permitted to increase the stipulated rent from $161.00 per month to $200.00 per month." "[A] request for approval of the lease at a rental of $200.00 per month was forwarded to RIDCA." "RIDCA at the express direction of HUD, refused to approve the requested rental increase because of new HUD regulations at 24 C.F.R. § 882.108 which limit annual rent adjustments to a certain percentage factor."

The complaint implies but does not expressly allege that her landlord was under no obligation to renew and had not renewed her March 1, 1979–February 29,. 1980 lease. The complaint states, presumably accurately, that that lease had "expired." When the complaint alleges that the "plaintiff sought to have her Section 8 lease renewed for an additional year and her landlord . . . was agreeable so long as he would be permitted to increase the stipulated rent from $161.00 per month to $200.00 per month," the plaintiff discloses that the negotiations were in fact not about a *renewal* of a lease but a *new lease*—a point which HUD and RIDCA later regarded as significant. See our "Discussion" *infra.*

The complaint implies in its prayers, but does not expressly allege, that the person or persons who had been her landlord under the expired March 1, 1979–February 29, 1980 lease had sought but been refused a HAP contract to accompany the proposed $200 monthly March 1, 1980–February 28, 1981 *new lease.*

month and she paid the $3 balance of the rent; that she and the landlord agreed that for the year beginning March 1, 1980 an appropriate rental would be $200 per month of which RIDCA would pay $195 and she would pay $5; but that RIDCA, because it deemed itself precluded by the December 29, 1978 amendment to 24 C.F.R. § 882.-108(a)(1) (hereafter the "challenged amendment"), refused to approve a monthly rate as high as $200 or to make the proposed contract; that, in plaintiff's view, the challenged amendment is invalid because it was promulgated without advance notice as required by 5 U.S.C. § 553 and 24 C.F.R. 10.1 *et seq.*, and because it is arbitrary and in violation of the United States Housing Act.

The complaint prayed for (1) a declaration of the invalidity of 24 C.F.R. § 882.-108(a)(1), and (2) temporary restraining orders and preliminary and permanent injunctions (a) prohibiting the Secretary of HUD from applying the annual adjustment factor to a request for rent adjustment by the plaintiff or her landlord and requiring the defendants to calculate the rent adjustment in accordance with 24 C.F.R. 882.108 as it existed before the December 29, 1978 amendment; and (b) requiring RIDCA to adjust the plaintiff's contract rent as of April 1, 1980 in accordance with the standards before the December 29, 1978 amendment and to make payment to her landlord on her behalf in accordance therewith.

It is undisputed that if the rent, which is specified in precisely the same amount in the lease and in the HAP contract, is adjusted as provided by 24 C.F.R. § 882.108 as it read before the December 29, 1978 amendment, the landlord will receive much more rent, RIDCA will be required to contribute much more, and the plaintiff will be required to contribute only a few dollars more than if the "contract rent" is adjusted as provided by the challenged amendment.

*Proceedings Following the Complaint*

The plaintiff on April 23 and her landlord on April 25, 1980 executed what is denomi-nated a "RENTAL LEASE" (not a renewal lease) at $200 per month "for the term of one year beginning April 1, 1980." This lease provided that "[i]f either party wishes to terminate this lease at the end of the term, he must give notice in writing to the other party no later than December 31, 1980."

On May 20, 1980 the plaintiff, on the ground that she no longer faced an imminent threat of irreparable injury,[8] moved to dismiss her request for temporary relief.

On June 2, 1980 the defendant filed a motion to dismiss the complaint "on the ground that the controversy upon which the action is based has become moot since the commencement of the action." The district judge assigned the motion to a magistrate for a hearing. He found that "[i]t is undisputed that a *new lease* was granted to the plaintiff under Section 8 which commenced on April 1, 1980 for a one-year term," (emphasis added), and he recommended that the defendants' motion to dismiss on the ground of mootness be granted. On appeal from the "Report and Recommendation of the Magistrate" the district judge recited that it was conceded that neither the plaintiff nor her landlord gave notice before December 31, 1980 terminating the lease that began on April 1, 1980 and that at the time of the hearing [March 20, 1981] before the district judge the plaintiff was a lessee of premises under a lease which continues for a term of at least one more year, beginning April 1, 1980. The district court held that there was no "case or controversy" as of March 20, 1981 because "this plaintiff can hardly claim any grievance as a result of the change in the regulations of HUD which isn't being applied to her . . . . whether or not the plaintiff might be affected by an application of the questioned regulation . . . is purely speculative at this point of time." Accordingly, the district court entered a judgment dismissing the complaint. The plaintiff appealed to this court.

8. We infer that before May 20, 1980, and probably before April 25, 1980, RIDCA approved the $200 per month lease and made with the landlord a contract related to that lease.

*Discussion*

The only issue presented to us is whether the district court erred in granting the defendants' motion to dismiss the complaint on the ground of mootness.

All parties and we agree on the preliminary points stated in the next paragraph.

At the time the plaintiff brought this action, RIDCA, as instructed by its principal, HUD, had applied and proposed to continue to apply the challenged amendment as the basis (1) for refusing to approve a proposed $200-a-month one-year lease from the landlord to the plaintiff and (2) for refusing to enter into a contract with the landlord to make payments to him in connection with the proposed lease. Thus, at the outset of this action there was undoubtedly a "case or controversy" which was justiciable under Article III of the United States Constitution. Moreover, the controversy was between the defendants and not merely the plaintiff's landlord to whose contract the challenged amendment was directed, but also the plaintiff. She would have been an intended third-party beneficiary of the proposed contract if RIDCA had been willing to make it, and she was a party to the proposed lease which RIDCA had refused to approve. It is abundantly clear that she has the requisite standing to sue because though the challenged amendment is not *in haec verba* addressed to her, one of its principal purposes is to affect her and her interests, and it directly and immediately did so. *Cf. Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). *See* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System (2d ed. 1973) at 159.

The defendants contended that what admittedly was once an actual justiciable controversy between the parties has ceased to be so as the result of the RIDCA's approval of the $200-a-month April 1, 1980–March 31, 1981 lease, the related contract, and the renewal of the lease for the period April 1, 1981–March 31, 1982.

The plaintiff maintains that there is still an actual controversy between her and the defendants. Her argument is that the defendants merely "waived" the application of the challenged amendment to her and did so only after she brought suit and that they are likely to apply the amendment to her in the future. She invokes the general rule that "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, *i.e.* does not make the case moot." *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979) quoting *United States v. W. T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). And the plaintiff also relies on the "capable of repetition yet evading review" doctrine, illustrated by *Super Tire Engineering Co. v. McCorkle,* 416 U.S. 115, 122, 94 S.Ct. 1694, 1698, 40 L.Ed.2d 1 (1974).

A complete answer to both the "cessation" doctrine and the "capable of repetition" doctrine is given by the following two paragraphs from defendants' brief.[9]

Following the filing of the complaint, HUD administratively resolved Ms. Free's problem based on the fact that so long as a Section 8 Existing owner has the legal right to terminate a tenancy upon expiration of the lease term, he or she may renegotiate the lease and HAP

---

**9.** Our justification for relying on the defendants' brief is as follows. The parts of the brief upon which we rely are representations by authorized agents of the defendants as to the meaning of the actions the defendant RIDCA took in approving the April 1, 1980–March 31, 1981 lease and in making a contract with the plaintiff's landlord. Such representations are binding on the defendants and so they have no ground to object to our use of them. As will appear in subsequent parts of our opinion, all of the statements we quote from the defendants' brief are unqualifiedly beneficial to the

plaintiff, and so they have no reason to object to our use of them.

The exceptional circumstances we have just recited make it unnecessary to remand this case to the district court to give the parties an opportunity to amplify the record by filling obvious gaps. We are not unmindful that already there have been expended time and money out of all proportion to the dollar amounts at stake in this non-class action which—at least after mootness became the dominant issue—has singularly little precedential value to those *in consimili casu* with the plaintiff.

contract with the same family, in effect treating them as a new Section 8 tenant. Under a renegotiated Section 8 lease and HAP contract, the rent may be set at a higher level than the AAF would allow, in an amount up to the increase in Fair Market Rents provided that the PHA determines the rent to be reasonable. As a result of HUD's advice to the PHA and the owner, a new lease was entered into with Ms. Free, effective April 1, 1980, with a one year term extending to April 1, 1981, and a corresponding HAP contract was executed. The monthly rent was set at $200, which was the amount sought by the owner; of that amount, the PHA was to pay $195 monthly and Ms. Free $5 monthly.

...... *HUD advised the PHA and the owner that an alternative approach for rent adjustments is available in any situation where an owner has the legal right to refuse to renew a lease at the end of the lease term, where the owner would refuse to renew the lease if he were not permitted a higher rent, and where the vacancy rates in the locality are such that the tenant would have difficulty finding another Section 8 apartment.* The option recommended was based on the essential characteristic of the Section 8 Existing program ...... whereby a Section 8 owner (or tenant) has the right to refuse to renew a lease where the lease term had run without any demonstration of good cause, provided that he or she complies with the procedure stated in the lease. (Emphasis added.)

Those paragraphs show that, in effect, after this action was brought, HUD, acting within its statutory authority, in order to accomplish the purposes of Section 8, rendered an interpretation, not previously made, of the challenged amendment and related sections of 24 C.F.R. Part 822; that such interpretation permits a landlord—and thus necessarily his tenant—to have the benefit of 24 C.F.R. 882.108(a)(1) as it read before the challenged amendment provided that the landlord "has the legal right to refuse to renew a lease at the end of the lease term, where the owner [landlord] would refuse to renew the lease if he were not permitted a higher rent, and where the vacancy rates in the locality are such that the tenant would have difficulty in finding another Section 8 apartment."

By those paragraphs the defendants in substance admit that, properly interpreted, the challenged amendment was not a barrier to HUD's approval of a *new* lease and will not be a barrier to a future *new* lease between the plaintiff and her landlord. It is "absolutely clear" that there is no reasonable expectation [10] of repetition of use of the challenged amendment against the plaintiff.[11] *Vitek v. Jones*, 445 U.S. 480, 487, 100 S.Ct. 1254, 1260, 63 L.Ed.2d 552 (1980).

10. We need not consider whether if the defendants sought to revert to their original interpretation of the challenged amendment, then in a case between them and the plaintiff doctrines of issue preclusion (sometimes called collateral estoppel) would keep them bound, at least so far as the plaintiff was concerned, to adhere to the interpretation of the challenged regulation which we have incorporated in a determination essential to our judgment. See *Restatement (Second) of Judgments*, § 68 (Tent, Draft No. 2 1975). ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.").

11. We have not found it necessary to decide whether in connection with contract rates set forth in any contract whatsoever, regardless who was a party or a beneficiary of the contract, the rates are not regulated by 24 C.F.R. § 882.108 unless the lease to which the contract refers has a term of at least 366 days (or if a leap year is involved, 367 days). Both before and after the December 29, 1978 amendment, that subsection refers only to "annual adjustments" "as of any anniversary date of the lease." In ordinary usage, the phrase annual "anniversary date of the lease" implies that there is involved one lease which has a term of more than 365 days. It is not common to refer to a one-year *new lease*, or even a one-year renewal lease, as having an annual "anniversary date" calculated with reference to the date on which the term of an expired lease began. But perhaps in § 882.108 annual "anniversary date" is used, at least so far as concerns *renewal* leases, in a Pickwickian sense as referring to the birth of a now dead lease.

What the Supreme Court held in *County of Los Angeles v. Davis, supra,* 440 U.S. 631, 99 S.Ct. 1383, is squarely in point:

. . . . [J]urisdiction, properly acquired, may abate if the case becomes moot because

(1) it can be said with assurance that "there is no reasonable expectation . . ." that the alleged violation will recur, see *id.,* at 633, 99 S.Ct. at 1384; see also *SEC v. Medical Committee for Human Rights,* 404 U.S. 403, 92 S.Ct. 577, 30 L.Ed.2d 560 (1972), and

(2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation. *See, e.g., DeFunis v. Odegaard,* 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974); *Indiana Employment Security Div. v. Burney,* 409 U.S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62 (1973).

When both conditions are satisfied it may be said that the case is moot because neither party has a legally cognizable interest in the final determination of the underlying questions of fact and law.

The so-called "cessation" exception to the mootness principle (upon which, by citing *United States v. W. T. Grant Co., supra,* the plaintiff relies) has no application to the instant case. Here the defendants did not just cease to apply to the plaintiff the challenged amendment. They actually abandoned the view that the challenged amendment was preclusive in the case of a *new* lease. In the instant case the defendants have not resorted to manipulation or like devious practices to evade judicial review which as Justice Blackmun, dissenting in *Vitek v. Jones, supra,* 445 U.S. at 503, 100 S.Ct. at 1269, indicated are the justification of the cessation exception.

We are sensitive to the paradox inherent in the conclusions we have reached. The defendants win the judgment, but to the vanquished plaintiff belong the spoils. She has gained all that she started out to achieve—preclusion of the defendants from applying to her the challenged amendment. To be sure, she has accomplished this goal by leading HUD to reconsider the correct interpretation of the challenged amendment in light of other subsections of 24 C.F.R. Part 882, not by proving that the challenged amendment violates some statutory or constitutional provision. But to her and to her fellow tenants (on whose behalf she does *not* purport to sue) it is of purely academic interest whether the road to freedom is opened up by administrative reinterpretation of a regulation or by judicial invalidation of an application of that regulation.**

Judgment affirmed.

---

** We are reminded of Southey's *The Battle of Blenheim*:

'Now tell us all about the war,
and what they fought each other for.'
But what they fought each other for,
I could not well make out.
. . . .

'And everybody praised the Duke,
Who this great fight did win.'
'But what good came of it at last?'
Quoth little Peterkin.
'Why that I cannot tell,' said he,
'But 'twas a famous victory.'