Diane **SIMMONS** and John Chase, as parents and next friends of Felita D. Chase and Yalanda R. Chase, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**CHARLESTON HOUSING AUTHORITY,** Zelma Boggess, individually and in her capacity as Executive Director of the Charleston Housing Authority, Bruce Hogan, individually and in his capacity as Director of Housing of the Charleston Housing Authority, and Marlene Leonard, individually and in her capacity as Section 8 Manager of the Charleston Housing Authority, Defendants.

Civ. A. No. 2:94–1025.

United States District Court,
S.D. West Virginia,
Charleston Division.

March 22, 1995.

Daniel F. Hedges and Ryan Alexander, Appalachian Research & Defense Fund, Charleston, WV, for plaintiffs.

Charles R. Bailey, Shuman, Annand & Poe, Charleston, WV, for defendants.

*MEMORANDUM OPINION AND ORDER*

HADEN, Chief Judge.

Pending are Defendants' motions to dismiss, and Plaintiffs' motions to remand or certify question. Responses and replies have been filed to both sets of motions and these matters are ready for adjudication.

## I.

Plaintiffs commenced this litigation in the Circuit Court of Kanawha County on October 24, 1994. At some point thereafter, Plaintiffs filed an amended complaint. It names as defendants the Charleston Housing Authority (the "Authority") and three Authority representatives in their individual and representative capacities.[1] The amended complaint alleges plaintiff Diane Simmons began renting and residing with her four children in an apartment in Charleston, West Virginia in May of 1992. *Id.* at ¶ 21. In March of 1993, Ms. Simmons and her apartment were approved and certified for inclusion in the rent subsidy program sponsored by the Government pursuant to Section 8 of the United States Housing Act of 1937, 42 U.S.C. § 1437f ("Section 8"). *Id.* at ¶ 26.

The amended complaint alleges the apartment was first inspected by the Defendants several weeks after the apartment was certified for inclusion in the Section 8 rent subsidy program. *Id.* It contends Ms. Simmons directed the Defendants' attention to chipping and peeling paint in the apartment. *Id.* Plaintiffs contend the chipping and peeling paint was lead-based and Defendants took no action to remove or ensure the removal of the lead-based paint. *Id.* The amended complaint asserts the Authority approved a Housing Assistance Contract between the landlord of Ms. Simmons apartment and itself in April of 1993. *Id.* at ¶¶ 23 and 27.

Plaintiffs contend two of their four children tested positive in August of 1993 for above-normal levels of lead in their blood. *Id.* at ¶¶ 28, 29. Ms. Simmons then sought and received an environmental lead assessment of the apartment. *Id.* at Exhibit B. The assessment was performed by the Kanawha–Charleston Health Department and was noted to be "only a preliminary assessment." *Id.*[2] The assessment concluded numerous specific locations within the apartment contained "elevated" lead levels "which may need abatement." *Id.* Plaintiffs contend they made "repeated requests for inspection and abatement" of the lead paint problems, but Defendants ignored their requests. *Id.* at ¶ 32.

In the Amended Complaint, Plaintiffs claim the following: (1) Defendants failed to perform their duty to properly and regularly inspect plaintiffs' apartment in violation of *W.Va.Code* §§ 16–15–3, 7 and 17, *Id.* at ¶ 37; (2) Defendants violated the Lead–Based Paint Poisoning Prevention Act, 42 U.S.C. § 4822 *et seq., Id.* at 38; (3) Defendants violated the *Code of Federal Rules,* namely 24 C.F.R. §§ 882.109(i) and 882.404(c), *Id.* at ¶ 39; (4) Defendants violated 42 U.S.C. § 1437 *et seq., Id.* at ¶ 40; (5) Defendants violated 42 U.S.C. § 1983, *Id.* at ¶ 41; (6) Defendants violated 24 C.F.R. §§ 882 *et seq., Id.* at ¶ 42; (7) Defendants violated the "Section 8 Inspection Manual as well as the Section 8 Administrative Practices Handbook," *Id.* at ¶ 43; (8) Defendants breached their "Annual Contributions Contracts with the U.S. Department of Housing and Urban Development," and that Plaintiffs are third-party beneficiaries of those contracts, *Id.* at ¶ 44; and (9) Defendants "have breached the Housing Assistance Payment Contracts between various private landlords and the [Authority] plaintiff class," *Id.* at ¶ 45.

## II.

Defendants moved to dismiss the complaint for failure to state claims pursuant to *Federal Rule of Civil Procedure* 12(b)(6). The Court of Appeals has recognized time and again:

---

1. *See* Amended Complaint at 3. The Authority representatives named as defendants are Zelma D. Boggess, Executive Director of the Authority; Bruce Hogan, Director of Housing for the Authority; and Marlene Leonard, Section 8 Manager of the Authority.

2. The assessment suggested Ms. Simmons contact a qualified lead abatement consultant for further testing and/or remedial action. *See* Amended Complaint at Exhibit B.

"In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Laboratories, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993), *cert. denied sub nom, American Home Products Corp. v. Mylan Industries, Inc.*, — U.S. —, 114 S.Ct. 1307, 127 L.Ed.2d 658 (1994).

Moreover,

"In light of the standard of review, ... even poorly drafted complaints [are to be viewed] in a light most favorable to the plaintiff: ... a Rule 12(b)(6) motion should be granted only in very limited circumstances. The Supreme Court has explained that '[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.' * * * 'a motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim.' *Rogers v. Jefferson–Pilot Life Ins. Co.*, 883 F.2d 324, 325 (4th Cir.1989) (citation omitted) (quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), and *Johnson v. Mueller*, 415 F.2d 354, 355 (4th Cir.1969))." *Id.* at 1134, n. 4.

*Accord Erickson v. Erickson*, 849 F.Supp. 453, 455 (S.D.W.Va.1994) (Haden, C.J.). *See*

*Ridgeway Coal Co., Inc. v. FMC Corp.*, 616 F.Supp. 404, 406–07 (S.D.W.Va.1985) (Haden, C.J.), *citing Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

### A.

Defendants contend Plaintiffs have failed to state a cause of action under the United States Housing Act, Title 42 U.S.C. § 1437, *et seq.*[3] (the "USHA"), and under the Lead–Based Paint Poisoning Prevention Act, 42 U.S.C. § 4821, *et seq.* (the "LBPPPA"). Defendants assert no private cause of action exists to enforce the provisions of either the USHA or the LBPPPA, and rely heavily upon the Court of Appeals holding in *Perry v. Housing Authority of the City of Charleston*, 664 F.2d 1210 (4th Cir.1981).[4] Plaintiffs contend *Perry* is distinguishable from the instant action, and private rights exist in this case under both USHA and LBPPPA, relying heavily on the district court decision in *Hurt v. Philadelphia Housing Authority*, 806 F.Supp. 515 (E.D.Pa.1992).[5] For the reasons expressed in the following discussion, plaintiffs have stated a cause of action pursuant to 42 U.S.C. § 1983 with respect to their federal statutory claims. Thus, although their theories of implied causes of action under the USHA or LBPPPA are potentially applicable to this case, they need not be considered further. *See Medley v. Ginsburg*, 492 F.Supp. 1294, 1298–99 (S.D.W.Va.1980).

### B.

In *Wright v. City of Roanoke Redevelopment and Housing Authority*, 479 U.S. 418, 423, 107 S.Ct. 766, 770, 93 L.Ed.2d 781, 788 (1987), the Supreme Court outlined when a cause of action under § 1983 may lie:

**3.** Title 42 U.S.C. § 1437 (1990) states, in pertinent part:

"It is the policy of the United States to promote the general welfare of the Nation by employing its funds and credit, as provided in this chapter, to assist the several States and their political subdivisions to remedy the unsafe and unsanitary housing conditions and the acute shortage of decent, safe and sanitary dwellings for families of lower income and, consistent with the objectives of this chapter, to vest in local public housing agencies the

maximum amount of responsibility in the administration of their housing programs."

**4.** The *Perry* court was faced only with the issue of implied rights under USHA; implied rights under the LBPPPA was not in issue.

**5.** The Court notes the *Hurt* Court's rationale is less than compelling when one considers it failed to analyze the doctrine of implied private causes of action under the traditional test outlined in *Cort v. Ash*, 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

"In *Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), held that § 1983 was available to enforce violations of federal statutes by agents of the State. *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981), and *Middlesex County Sewerage Authority v. National Sea Clammers Assn.,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981), however, recognized two exceptions to the application of § 1983 to remedy statutory violations: where Congress has foreclosed such enforcement of the statute in the enactment itself and where the statute did not create enforceable rights, privileges, or immunities within the meaning of § 1983. * * * [I]f there is a state deprivation of a 'right' secured by a federal statute, § 1983 provides a remedial cause of action unless the state actor demonstrates by express provision or other specific evidence from the statute itself that Congress intended to foreclose such private enforcement."

The Supreme Court clarified the test for determining what type of federal statutes create "rights" enforceable under § 1983 in *Wilder v. Virginia Hospital Association,* 496 U.S. 498, 509, 110 S.Ct. 2510, 2517, 110 L.Ed.2d 455, 467 (1990):

" 'Section 1983 speaks in terms of "rights, privileges, or immunities," not violations of federal law.' *Golden State Transit Corp. v. Los Angeles,* 493 U.S. 103, 106, 110 S.Ct. 444, 448, 107 L.Ed.2d 420 (1989) (emphasis added). We must therefore determine whether the [federal statute] creates a 'federal right' that is enforceable under § 1983. Such an inquiry turns on whether 'the provision in question was intend[ed] to benefit the putative plaintiff.' *Ibid.* (citations and internal quotations omitted). If

so, the provision creates an enforceable right unless it reflects merely a 'congressional preference' for a certain kind of conduct rather than a binding obligation on the governmental unit, *Pennhurst State School and Hospital v. Halderman,* 451 U.S. 1, 19, 101 S.Ct. 1531, 1541, 67 L.Ed.2d 694 (1981), or unless the interest the plaintiff asserts is ' "too vague and amorphous" ' such that it is ' "beyond the competence of the judiciary to enforce." ' *Golden State, supra,* 493 U.S., at 106, 110 S.Ct., at 448 (*quoting Wright, supra,* 479 U.S., at 431–432, 107 S.Ct., at 774)."

■ Based upon the foregoing, the test for whether an enforceable right exists pursuant to § 1983 may be expressed as follows: *First,* was the federal statute in question intended to benefit the putative plaintiff? If not, there is no enforceable right. If so, *second,* does the federal statute create a binding obligation on the governmental unit; a mere congressional preference to guide conduct is insufficient to create a § 1983 right. *Third,* is the right asserted enforceable by the judiciary? Vague and amorphous interests are not enforceable under § 1983. *Fourth,* if a putative plaintiff overcomes the juridical hurdles, the burden shifts to the state actor to show by express or specific evidence from the statute itself that Congress foreclosed a § 1983 cause of action.

■ It is clear both the USHA and the LBPPPA are intended to benefit the Plaintiffs. In *Perry v. Housing Authority of the City of Charleston, supra,* 664 F.2d at 1213, the Court of Appeals held the USHA was intended to benefit low-income housing residents.[6] The LBPPPA, 42 U.S.C. § 4822 (1992), directs the Secretary of HUD to "establish procedures to eliminate as far as practicable the hazards of lead based paint

---

**6.** The court held there were two categories of beneficiaries: low income housing tenants and the several states:

"[T]he legislation had two beneficiaries—states as direct beneficiaries and low-income families as indirect beneficiaries. While [Title 42 U.S.C. §§ 1437d(c) and 1441] are too general to create substantive rights in the tenants or duties in the landlords, *see Cannon [v. University of Chicago,]* 441 U.S. [677,] 690–93 n. 13, 99 S.Ct. [1946,] 1954–56 n. 13, [60 L.Ed.2d 560 (1979),] there is no question but that low in-

come tenants were desired beneficiaries of the legislation." (footnote omitted). *Id.* at 1213, *citing Falzarano v. United States,* 607 F.2d 506, 509 (1st Cir.1979), *Thompson v. Washington,* 497 F.2d 626, 633 (D.C.Cir.1973), *National Tenants Organization, Inc. v. Department of Housing and Urban Development,* 358 F.Supp. 312, 314 (D.D.C.1973), *remanded,* 505 F.2d 476 (D.C.Cir.1974), *Silva v. East Providence Housing Authority,* 423 F.Supp. 453, 464 (D.R.I.1976), *remanded,* 565 F.2d 1217 (1st Cir.1977). *Id.* at 1213.

poisoning with respect to any existing housing which may present such hazards and which is covered by an application for ... housing assistance under a program administered by the Secretary or otherwise receives more than $5000 in project-based assistance under a Federal housing program." It is abundantly clear the LBPPPA was enacted to "to eliminate as far as is practicable the hazards of lead based paint poisoning" in the residences of persons receiving housing assistance under a HUD administered program. Plaintiffs are among such persons, and the LBPPPA was clearly enacted for their benefit.

■ The more difficult question is whether the USHA and LBPPPA create binding obligations on the Defendants. Defendants argue the language used by the two statutes is a mere expression of Congress' preferred behavior. Plaintiffs contend a mandatory obligation is imposed upon the Defendants. The Court agrees with Plaintiffs, primarily because the language of the LBPPPA mandates the elimination of lead-based paint poisoning "as far as practicable."[7] As defined in *Ashton v. Pierce*, 716 F.2d 56, 64 (D.C.Cir.), *amended*, 723 F.2d 70 (D.C.Cir. 1983):

"There is not a shred of contemporaneous legislative history to indicate that Congress intended the phrase 'as far as practicable' to have other than its plain meaning. In plain language Congress commanded that if it is 'practicable' to eliminate an immediate hazard, that hazard *must* be eliminated. The statute admits of no exceptions to the required elimination procedures on the basis of the *degree* of practicability." (emphasis in original).

It is clear the Court of Appeals for the District of Columbia held the LBPPPA to mandate elimination of immediate lead based paint poisoning hazards, and that "[t]he stat-

ute admits of no exceptions[.]" This Court concurs the LBPPPA creates a *mandatory* and binding obligation on the part of the Defendants to eliminate immediate lead based paint poisoning hazards; it does not evidence a mere congressional preference. Thus, Plaintiffs have met the second part of the test outlined in *Wilder, supra.*

■ The Court next examines whether the right claimed by Plaintiffs may be enforced by the judiciary. In *Wright v. City of Roanoke Redevelopment and Housing Authority, supra*, 479 U.S. at 431, 107 S.Ct. at 774, 93 L.Ed.2d at 793, the defendant claimed the right asserted was too vague and amorphous to enforce. The Supreme Court relied upon the specific nature of the Brooke Amendment's implementing regulations in determining the right conveyed was sufficiently specific to allow enforcement. *Id.* In *Hurt v. Philadelphia Housing Authority, supra*, the plaintiffs cited the implementing regulations of the USHA and LBPPPA, specifically 24 C.F.R. § 35, to support their contention 42 U.S.C. § 1983 provides a remedy for a deprivation of rights under those statutes. The *Hurt* Court analyzed those provisions as follows:

"[Title] 24 C.F.R. § 35 ("Part 35"), ... was issued in response to the [LBPPPA] and more specifically directs HUD officials to carry out the lead-poisoning prevention measures envisioned by that Act.

"Subpart C of Part 35 is entitled 'Elimination of Lead–Based Paint Hazards in HUD–Associated Housing.' Section 35.24 of this Part is entitled 'Requirements' and concludes with § 35.24(4):

"Any requirements of this section shall be deemed superseded by a regulation by an Assistant Secretary with respect to any program under his or her jurisdiction which states expressly that it is promulgated under the authorization granted in this

---

7. In the instant case the Department of Housing and Urban Development's implementing regulations, 24 C.F.R. § 882.109(i), as well as the statute itself, enunciate the following purpose: "to implement the provisions of section 302 of the Lead–Based Paint Poisoning Prevention Act, 42 U.S.C. § 4822, by establishing procedures *to eliminate as far as practicable* the hazards of lead-based paint poisoning with respect to exist-

ing housing units for which Requests For Lease Approval are made[.]" (emphasis added). *See also,* 24 C.F.R. § 965.701 (The LBPPPA is to implemented "by establishing procedures *to eliminate as far as practicable* the immediate hazards from the presence of paint that may contain lead in PHA-owned housing assisted under the United States Housing Act[.]" (emphasis added)).

section and supersedes, with respect to programs within its defined scope, the requirements prescribed by this section. *See, e.g.,* 24 CFR ... § 882.109(i) (Section 8 Existing Housing); part 965, subpart H (Public Housing)....

"Pursuant to this subsection, § 882.109(i) and part 965, subpart H (§§ 965.701–965.711), are incorporated into Part 35 (and thus become part of the [LBPPPA's] implementing regulations). At the same time, § 882.109(i) and §§ 965.701–965.711 are incorporated into those segments of the Code of Federal Regulations issued pursuant to the USHA. Parts 882 and 965. Thus, the USHA and the [LBPPPA] provide a dual source of authority for the issuance of these regulations, which serve to implement both statutes.

"These regulations require local housing authorities which receive funds from HUD to inspect the units under their management for lead-based paint and to cover or remove such paint where found. Unlike the general policy provision of § 1437, such anti-lead poisoning measures are specific, affirmative obligations akin to the rent ceiling provision at issue in *Wright.* Because they do not suffer from the general policy language vagueness of § 1437, these regulatory provisions create rights in plaintiffs enforceable under § 1983." (footnote omitted).[8] 806 F.Supp. at 525–26.

Defendant argues the Court of Appeals decision in *Perry, supra,* precludes the finding of a § 1983 right in the instant case. Although it is true the *Perry* Court found no § 1983 "right" under § 1437 of the USHA, that court did not examine the LBPPPA or the implementing regulations of either statute.[9] *Perry* is thus easily distinguishable. Here, the Plaintiffs have cited to both the LBPPPA and the implementing regulations of both statutes. The *Hurt* Court determined, and this Court concurs, the implementing regulations of the USHA and the LBPPPA are specific enough to create a § 1983 "right" in the plaintiffs.

The Defendants have not cited and this Court has not found anything in the statute or regulations precluding the § 1983 cause of action in this case. Therefore, the Court concludes Plaintiffs have stated a valid cause of action pursuant to § 1983.

### C.

■ Defendants assert they are entitled to qualified immunity from this lawsuit because the "right" asserted by Plaintiffs was not clearly established at the time the right was allegedly deprived. Plaintiffs contend the right to notice and abatement of lead-based paint hazards is clear from the LBPPPA, its implementing regulations, and from *Ashton v. Pierce, supra.* For the reasons that follow, the Court concurs with the Plaintiffs.

Qualified immunity from civil damages is granted to state actors who do "not violate *clearly established* statutory or constitutional rights of which a reasonable person would have known." (emphasis added). *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396, 411 (1982). *Accord Akers v. Caperton,* 998 F.2d 220, 226 (4th Cir.1993). "[T]he critical inquiry is the state of the law *at the time of the official's actions,* not the result reached after years of judicial pondering." *Akers v. Caperton, supra,* 998 F.2d at 227, *citing Harlow, supra,* 457 U.S. at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410–11, *Swanson v. Powers,* 937 F.2d 965, 967–71 (4th Cir.1991), *cert. denied,* 502 U.S. 1031, 112 S.Ct. 871, 116 L.Ed.2d 777 (1992), and *McConnell v. Adams,* 829 F.2d 1319, 1324–26

---

8. Title 24 C.F.R. § 965.704 states:

"**Maintenance Obligation.**

"In family projects constructed prior to 1978 or substantially rehabilitated prior to 1978, the PHA shall visually inspect units for defective paint surfaces as part of routine periodic unit inspections. If defective paint surfaces are found, covering or removal of the defective paint spots as described in § 35.24(b)(2)(ii) of this title shall be required. Treatment shall be completed within a reasonable period of time."

9. The reason the Court of Appeals did not examine the LBPPPA or the implementing regulations is simply because those provisions were not cited by the *Perry* plaintiffs: "The plaintiffs have not pointed to any substantive provisions of the various housing acts which give them a tangible right, privilege or immunity. They have only cited to 42 U.S.C. § 1437[.]" 664 F.2d at 1217.

(4th Cir.1987), *cert. denied sub nom, Virginia ex. rel. State Bd. of Elections v. Kilgore,* 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195, and *cert. denied,* 486 U.S. 1006, 108 S.Ct. 1731, 100 L.Ed.2d 195 (1988). The question for the Court is whether the right to notice of lead paint and to abatement thereof existed at the time the right allegedly was ignored.

As the Court in *Ashton v. Pierce, supra,* stated, Congress utilized "plain language" in mandating elimination of lead-based paint hazards. Moreover, as noted above, the *Code of Federal Rules* outlines with specificity the nature of the Plaintiffs' rights. *See* Part 35 of Title 24 *C.F.R.* and footnote 7, *supra.* Defendants' argument relies primarily upon the Court of Appeals decision in *Perry, supra.* It is true the *Perry* Court concluded no cause of action existed under § 1983 for deprivation of rights pursuant to 42 U.S.C. § 1437. But as noted above, Plaintiffs in this action do not rely only on § 1437. They cite to the LBPPPA, a statute much more specific than the mere precatory language found in § 1437, and to the USHA and LBPPPA's implementing regulations, neither of which were discussed or examined by the *Perry* Court. Examination of the USHA, the LBPPPA and their implementing regulations leads the Court to conclude a "clearly established" cause of action existed under § 1983 precluding Defendants' assertions of qualified immunity.

## D.

■ Defendants contend Plaintiffs breach of contract claims must be dismissed because they are only incidental beneficiaries with no right to sue on the Annual Contribution Contract between HUD and the Charleston Housing Authority. Defendants again cite *Perry, supra,* 664 F.2d at 1218, in support of their argument:

"[P]laintiffs have alleged on appeal that they are third-party beneficiaries to the contract between [the Housing Authority] and HUD. This claim has been examined and rejected by several courts. We join these courts in finding that, based on the statutory scheme, the Annual Contributions Contract between HUD and [the Housing Authority], and the lease between [the Housing Authority] and the tenants, the plaintiffs are at best incidental beneficiaries to the contract between HUD and [the Housing Authority] and therefore have no right to sue [the Housing Authority]." (footnote omitted).

Plaintiffs cite cases from other jurisdictions to support their position. *See Samuels v. District of Columbia,* 770 F.2d 184 (D.C.Cir. 1985); *Ashton v. Pierce, supra; Free v. Landrieu,* 666 F.2d 698, 700 (1st Cir.1981); *Holbrook v. Pitt,* 643 F.2d 1261 (7th Cir.1981); *Tinsley v. Kemp,* 750 F.Supp. 1001 (W.D.Mo. 1990); *McNeill v. New York City Housing Authority,* 719 F.Supp. 233 (S.D.N.Y.1989); *Concerned Tenants Ass'n of Father Panik Village v. Pierce,* 685 F.Supp. 316 (D.Conn. 1988). *See also, Henry Horner Mothers Guild v. Chicago Housing Authority,* 824 F.Supp. 808, 820 (N.D.Ill.1993); *Hurt, supra; Gomez v. Housing Authority of the City of El Paso,* 805 F.Supp. 1363, 1368 (W.D.Tex. 1992), *aff'd,* 20 F.3d 1169 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 198, 130 L.Ed.2d 129 (1994); *Henry Horner Mothers Guild v. Chicago Housing Authority,* 780 F.Supp. 511, 515 n. 4 (N.D.Ill.1991); *Curtis v. Housing Authority of Oakland,* 746 F.Supp. 989, 997 n. 17 (N.D.Cal.1990). This Court is faithful to the law of the Fourth Circuit. *Doe v. Charleston Area Medical Center, Inc.,* 529 F.2d 638, 642 (4th Cir.1975). Therefore, the Court must GRANT Defendant's motion to dismiss the breach of contract claims.

## E.

■ Plaintiffs have alleged violations of state law, *i.e., W.Va.Code* §§ 16–15–3, 7 and 17. Defendants object they are immune from state tort claims pursuant to the West Virginia Governmental Tort Claim and Insurance Reform Act, *W.Va.Code* § 29–12A–1, *et seq.* Plaintiffs contend only that the federal claims are not affected by the state Tort Reform Act. Defendant concurs. Because Plaintiffs have failed to meet Defendants' argument on this point, the motion to dismiss the state causes of action based on state law immunity is **GRANTED.**

### III.

Because the state causes of action are dismissed, there is no basis for a motion to remand the cause to state court. The motion to remand is **DENIED.**

### IV.

Based upon the foregoing, Defendants' motion to dismiss Plaintiffs breach of contract and state law claims are **GRANTED** and those claims are **ORDERED DISMISSED.** Of Plaintiffs' remaining claims, each present alternative theories of liability based upon identical conduct. The Court concludes Plaintiffs have asserted a valid cause of action under 42 U.S.C. § 1983. Therefore, Defendants' motion to dismiss Plaintiffs' claim pursuant to 42 U.S.C. § 1983 is **DENIED.** Plaintiffs may proceed on the § 1983 claim. Plaintiffs' motion to remand, or in the alternative certify question, is also **DENIED.**[10]

---

**10.** Defendants have also moved in opposition to certification of a class in this case. Because this issue has been inadequately developed in the pleadings, the Court **GRANTS** the motion in opposition to class certification **WITHOUT PREJUDICE.** Plaintiffs may move to certify a class if appropriate.