Arcadio **APONTE–ROSARIO, Mirta Colon–Pellicier, Rosanna De–Leon–Rivera, Iris Margarita Aponte–Marrero, Luz Elena Ramos Ayala, on behalf of themselves and all others similarly situated, as residents of Las Gladiolas Public Housing Project, Plaintiffs**

**v.**

Honorable **Anibal Acevedo VILA, Governor of the Commonwealth of Puerto Rico, Honorable Jorge Rivera, Secretary of Housing of the Commonwealth of Puerto Rico, Carlos Laboy, Director of the Puerto Rico Public**

Housing Administration, Honorable Alphonso Jackson, Secretary of the United States Department of Housing and Urban Development, Michael Colon, Field Office Director and Olga Saez, Public Housing Director of the Office for Puerto Rico/Virgin Islands of the United States Department of Housing and Urban Development, All in their Official and Representative Capacities and American Management, Inc., Defendants.

Civil No. 06–1578CCC.

United States District Court, D. Puerto Rico.

Dec. 10, 2008.

Myrta Morales–Cruz, Esq., for Plaintiffs.

Roberto J. Sánchez–Ramos, Secretary of Justice, Comm. of Puerto Rico, José Enrico Valenzuela–Alvarado, Esq., Mariliz Vázquez–Marrero, Esq., Commonwealth of Puerto Rico, Rosa Emilia Rodríguez–Vélez, United State Attorney, San Juan, PR, Agnes I. Cordero, Assistant U.S. Attorney, for Defendants.

## OPINION AND ORDER

CARMEN CONSUELO CEREZO, District Judge.

Before the Court is the amended Motion for Summary Judgment filed by defendants Anibal Acevedo–Vilá, Governor of the Commonwealth of Puerto Rico (Commonwealth), Jorge Rivera, Secretary of the Department of Housing of the Commonwealth and Carlos Laboy, Director of the Public Housing Administration of the Commonwealth (the Commonwealth defendants) on March 4, 2008 (**docket entry 161**) and plaintiffs' amended opposition filed on March 24, 2008 (**docket entry 166**). Although the amended dispositive motion did not include the corrections set forth in the January 29, 2008 Order (docket entry 157), so as not to further delay proceedings this ruling shall make the necessary modifications regarding exhibit numbers and/or statements of uncontested material facts (SUMF). The Court notes that movants did comply with the January 29, 2008 Order (docket entry 158) regarding the submission of specific evidence, except for the minutes of the March 11, 2002 meeting of the Puerto Rico public housing authority and the Las Gladiolas Residents Council which was purportedly a part of enclosure A–3 of exhibit 4–G (the application for demolition approval).

Plaintiffs' amended opposition, as did its previous opposition (docket entry 100), abandoned the alleged violation of 42 U.S.C. § 1437c–1(e) based on the claim that the Commonwealth defendants did not develop its five-year and annual Agency Plans in consultation with a Resident Advisory Board(s)(RAB). Both the original version and the amended opposition identify and discuss the issues as the existence of a *de facto* demolition of the Las Gladiolas public housing complex in violation of 42 U.S.C. § 1437p(d) and the lack of consultation in the development of the application for demolition approval under 42 U.S.C. § 1437p(b)(2). The amended Motion for Summary Judgment addressed plaintiffs' § 1437c–1(d) action at pages 29 through 40 and listed as supporting amended SUMFs those numbered 22 through 41. All of these provide information regarding the annual Agency Plans presented since the year 2001 by the Puerto Rico Public Housing Administration (PRPHA) which include a proposal for demolition for Las Gladiolas I and II through the year 2005. Plaintiffs not only ignored the entire discussion on this subject; they also responded to these particular SUMFs by repeatedly stating, on ten occasions, that "[w]hat is at issue is whether the complex is in good maintenance and operating conditions and the lack of consultation to residents in the development of the application for demolition, as required by 42 U.S.C. § 1437p." *See* amended Opposing Statement of Material Facts (docket entry 167), at items 22, 23, 24, 25, 26, 27, 29, 30, 31 & 37. Other similar references used in dismissing their § 1437c–1(d) are the following: "[i]n the case at hand, what is at issue is the lack of consultation to residents in the development of the application for demolition, as required by 42 U.S.C. § 1437p" (*see id.,* at items 28, 35, 36, 41 & 42) and "... the requirements for the development of a Public Housing Ad-

ministration (PHA)'s Annual Plan are not at issue in the case at hand." *Id.,* at item 39. Plaintiffs having relegated their § 1437c–1 claim as an irrelevant matter, the Court shall adjudicate the § 1437p consultation claim and the *de facto* demolition issue.

I. Claim under 42 U.S.C. § 1437p(b)(2) for the alleged development of the application for demolition without resident consultation.

The statute provides:

The Secretary shall disapprove an application submitted under subsection (a) of this section if the Secretary determines that—

. . . . .

(2) the application was not developed in consultation with—

(A) residents who will be affected by the proposed demolition or disposition;

(B) each resident advisory board and resident council, if any, of the project (or portion thereof) that will be affected by the proposed demolition or disposition; and

(C) appropriate government officials.

On February 2, 2006, the U.S. Department of Housing and Urban Development (HUD) issued its approval for the PRPHA's request for the demolition of two buildings housing 296 units at Las Gladiolas I and of two buildings housing 380 units at Las Gladiolas II. The applications were both received on April 28, 2005 and supplemental information was received through November 17, 2005. The HUD approval of the PRPHA's proposal for demolition of the two projects sets forth the reasons or justifications for the demolitions, the process for relocation of the remaining residents, resident consultation, board resolution, government consultation, replacement housing and transition fund-

ing. The subject matters relevant to a § 1437p resident consultation claim are resident consultation and board resolution. The specific residents organizations listed as having been consulted are Las Gladiolas I Residents' Board (LGIRB) and Las Gladiolas II Residents' Board (LGIIRB). The date taken into account regarding resident consultation are five public hearings held throughout Puerto Rico to present the Agency's Annual Plans for Fiscal Year 2004–2005 to the residents of public housing and a February 22, 2005 meeting of the PRPHA with LGIRB, LGIIRB and Las Gladiolas' residents to discuss the proposed demolition. The application package submitted by the PRPHA for the proposed demolition included meeting notices, sign-in sheets and meeting minutes. These were submitted to the Court by movants in compliance with the Order requesting the three enclosures included in the application package to HUD. The HUD approval mentions, under the heading "Board Resolution," that "[a]s required by the Regulations, the PRPHA's Board of Commissioners approved the submission of the application for demolition of the proposed property on April 15, 2004 via Resolution Number HUD–50077."

Movants have provided supporting documents to show that the resident consultation acknowledged by HUD in its February 2, 2006 approval indeed took place, thus negating plaintiffs' allegation of lack of compliance with § 1437p(b)(2) requirements. The consultation advanced by plaintiffs was conducted through the public hearings on the agency's Annual Plans during a five-year period commencing on April 2, 2001 and ending on March 30, 2005, as well as a February 22, 2005 assembly of residents held at Las Gladiolas housing project covered basketball court organized by the PRPHA. *See* Exhibit 4G of Commonwealth defendants, Enclosures

A–2 on Annual Plans and A–1 on February 2005 meeting.

Enclosure A–2 reflects that each of the five Annual Plans from 2001 through 2005 included the corresponding to a "planned application" for a demolition of the total developments at Las Gladiolas I and II. "Planned application," as reflected in the HUD form, constituted an earlier status than that of "submitted pending approval" and "approved." Each Annual Plan contained a planned-for submission date and a timeline for activity consisting of an actual or projected start date and a projected end date. The 2001 Annual Plan included the activity description for Las Gladiolas I and II, among other housing projects, with a planned-for submission date of August 2001, an actual or projected start date of August 2001 and a projected end date of February 2002. The April 2, 2001 public hearing on the Annual Plan was notified by the PHA in at least two of the principal local newspapers. The newspaper notice gave the dates and locations for the different municipalities in which the 2001 Annual Plan would be discussed and informed the exact location where the proposed Annual Plan of the PHA was available for examination. Eighty persons from Las Gladiolas I and II signed the attendance sheet of such meeting. Mr. Arcadio Aponte, one of the plaintiffs who voiced his opposition to the demolition then and in later years, testified before PHA officials including the Administrator. He acknowledged that there were residents for and against the demolition of Las Gladiolas. At page 67 of the April 2, 2001 transcript he stated the reasons for his opposition and that of other residents for whom he served as spokesperson. He mentioned that the School of Social Work of the University of Puerto Rico had assisted them in organizing a united front of residents (Tr., p. 61) and that Las Gladiolas I and II residents who were against the demolition had organized under the name Residents in Action and were planning to register as a corporation in the Department of State. Tr., p. 67. He mentioned that, among the reasons for rejecting the demolition were the good location of the housing project, which made services and resources available to families in need and the distribution of the community that served to satisfy their needs. He requested that the demolition be detained and that they be allowed to participate in alternative plans. Another deponent was Adela de León, president of the Board of Residents of Las Gladiolas II. She mentioned that they had held an assembly where many residents voted yes and ten voted now. Her main concern was that they faced compulsory relocation and the uncertainty of how they could recreate their shared community life, when would the demolition occur, where would they be relocated, and what they would be offered. She suggested that they be relocated within residential projects with support services.

The Annual Plan for the year 2002 also included the total demolition of Las Gladiolas I and II with a planned-for submission date of May 15, 2002, a status of planned application, an actual or projected start date of activity of October 15, 2002 and a projected end date of activity of October 15, 2004. A public hearing was notified for March 27, 2002 in several newspapers more than once. The attendance sheet reflects that thirteen Las Gladiolas residents were present at such hearing, among these plaintiffs Arcadio Aponte and Adela de León mentioned above. These hearings were held at the PRPHA central headquarters in San Juan, Puerto Rico, with the attendance of the Deputy Administrator, Mr. Carlos Fournier, and other officials. Mr. Aponte made a presentation regarding the 2002 agency Annual Plan

and specifically stated that he appeared for the organization of Residents in Action of the Las Gladiolas condominium. He specifically addressed the planned demolition contained in the 2002 Annual Plan. He submitted to the agency officials written copy of the presentation, letters sent to different "places" which are directly or indirectly related with the demolition proposal, photos of residents engaged in cleaning and painting and an informative bulletin. He mentioned that in April 2001 the PHA included in its public hearing a draft of a five-year plan that addressed, among other matters, the implosion of Las Gladiolas. The residents decided to incorporate themselves under the name Residents in Action and submitted a presentation such as the one also prepared for 2002 indicating the reasons for disagreeing with the proposed action. Reference is made to a meeting, subsequent to the 2001 public hearing, with Secretary of Housing Ileana Echegoyen, where they were able to espouse the specific reasons against the demolition of Las Gladiolas, to wit: suitable housing with access to transportation, commerce, services and schools, among other facilities. The group asked the Secretary to consider the possibility of rehabilitating the physical facilities of the residential complex and that they be allowed to engage in activities to advance their community's development. They also requested a meeting with a member of the House of Representatives and as a result public hearings were held before the Legislature of Puerto Rico on the demolition of Las Gladiolas at which presentations were made by different entities that would be affected directly or indirectly including, among others, Las Monjas and Buena Vista wards located in close proximity to Las Gladiolas, Head Start and an elementary school, as well as the organization to which he belonged, Residents in Action. He also mentioned a presentation by Mr. Carlos Laboy, public housing administrator before the legislative committee as well as his critical remarks regarding Mr. Laboy's findings or omissions. Mr. Aponte referred to different efforts made by him to obtain information regarding the demolition proposal including costs of rehabilitation, one of which was an ocular inspection by a professor of architecture at the University of Puerto Rico and a structural engineer. He provided as part of his presentation photos taken by three persons of the residential complex in support of their contention that the physical structure of the Las Gladiolas buildings could be rehabilitated. He requested the stay of the proposed demolition of Las Gladiolas, that a complete specialized study of the residential units and common areas be made to determine the real cost of the rehabilitation, that an appraisal of the Las Gladiolas complex be made to compare its value with the cost of modernization claimed by the PHA, that residents' preference as to the demolition be considered and that residents be allowed real participation in management and economic development and that PHA consider a housing proposal with a component of cooperativism based on a legislative proposal submitted in the year 1993.

The agency's Annual Plan for the year 2003 was discussed at public hearings duly notified in focal newspapers which again included a planned application for the total demolition of Las Gladiolas I and II, planned for submission on July 15, 2003, with an actual or projected start date of activity of May 15, 2004 and projected end date of activity of May 15, 2006. This hearing was held on March 28, 2003 in the PHA's office building in San Juan. The public notice was published more than once and indicated the exact location where drafts of the Annual Plan for fiscal year 2003–2004 could be examined. The

notice mentioned, as did previous ones, that transportation would be provided for residents of the public housing projects. Six residents from Las Gladiolas attended according to the attendance sheet of March 28, 2003. Mr. Arcadio Aponte was a deponent whose presentation, as well as the two previous ones, was against the demolition. On this third occasion he did not submit written comments. He stated that the government had no assigned any funds for rehabilitation work at Las Gladiolas, that the arguments raised by him the year before in the public hearings were brought before the Committee on Municipal Development of the House of Representatives of Puerto Rico where concerns were raised regarding the proposed demolition and that the Committee issued a report that was sent to the PHA. He mentioned that his previous presentations were based on meetings with housing officials, some of whom were present at the 2002 hearing to inquire as to alleged construction defects and further inquiring as to the cost of modernizing Las Gladiolas at a sum that supposedly surpassed the 90% cap fixed by HUD. According to Aponte's testimony, the legislative committee on municipal development submitted recommendations for a study regarding the physical condition of Las Gladiolas structures to determine whether demolition was justified, that an appraisal of the real property be made and an assessment of the relocation cost and of the substitute housing. Mr. Aponte opined that photos of Las Gladiolas reflect that the deterioration of the physical areas is due to lack of maintenance, specifically of the incinerators, lighting and the cisterns. He stated the reasons why relocation to other sites was not feasible. He emphasized on the fact that this is a community that has existed over three decades, that the recommendation made to housing be considered before reaching a decision, that a sampling of

opinions made by the UPR reflected that a majority of the 240 residents contacted expressed concerns over the demolition as they understood that they reside in an accessible location with access to transportation and schools and that a majority of the housing units were in good condition allowing for the rehabilitation.

The agency's Annual Plan for fiscal year 2004–05 included Las Gladiolas I and II in the same status of a planned application for total demolition, with a planned date for submission of July 15, 2004, actual or projected start date of activity of December 15, 2004 and projected end of activity on December 15, 2007. This proposed activity for Las Gladiolas was discussed at a scheduled public hearing held on March 25, 2004, which had been previously notified in local newspapers. As on previous occasions, the public notification indicated the exact location where a draft of the agency plan for 2004–05 could be obtained and announced the availability of transportation for all residents. Eight public housing officials were present. There were twenty-three deponents, none from Las Gladiolas although one Las Gladiolas resident signed the attendance sheet.

The last relevant agency Annual Plan for fiscal year 2005–06 was discussed by public housing residents in a public hearing held on March 30, 2005. The plan included a planned application for a total demolition of Las Gladiolas I and II with a planned-for submission application date by March 15, 2005, an actual or projected start date of activity of November 15, 2005 and a projected end date of activity of November 15, 2007. Six persons identified as Las Gladiolas residents attended; total attendance from the housing projects totaled fifty-four persons. Among the Las Gladiolas residents attending was Adela de León, president of the Residents' Council of Las Gladiolas II. Mr. Carlos Laboy,

administrator of the PRPHA, and other officials and personnel were present. Forty persons gave testimony but none from Las Gladiolas residential projects.

Approximately five weeks earlier, on February 22, 2005, the PHA convened an assembly of Las Gladiolas residents to discuss "important matters for the benefit of the community." *See* Enclosure A–1 to Exhibit 4G. The attendance sheet reflects that 170 residents and 35 housing personnel of different areas were present. PHA administrator Laboy was also present. The minutes of said meeting state that Mr. Laboy commenced by informing that Las Gladiolas was in the process of relocation, that the relocation was temporary and involved 290 families and that there was a security problem the required the relocation of the families living in Tower 300. The minutes reflect that the residents' principal concern involved their displacement, what alternative housing would be offered, and the emotional impact of relocation upon them. Along with these concerns, the residents also questioned why the PHA had not taken into account a report from the Committee on Municipal Development of the House of Representatives which indicated that the structures should be rehabilitated, they warned that they were going to place the PHA on notice so that UPR architects could evaluate the structures and questioned the claim that there were insufficient funds to repair the Tower 300 building. Mr. Arcadio Aponte, who appeared as a spokesperson for the residents against the demolition during the 2001, 2002 and 2003 public hearings on the agency's Annual Plans expressed at the February 22, 2005 residents' assembly that Tower 300 was still standing and raised the subject matter of the Committee for Municipal Development, the legislative committee which had held hearings on the Las Gladiolas demolition. Mr. Aponte testified in detail on the role of this Committee and its investigation regarding the demolition on the public hearing for the agency's Annual Plan for the year 2003–04. The matters mentioned above are outlined in the minutes. However, there is no transcript of the presentation of the deponents at the February 22, 2005 assembly which lasted two hours and forty-five minutes.

Having examined the core documents submitted by the Commonwealth defendants in support of their Motion for Summary Judgment on the residents' consultation requirement of § 1437p(b)(2), we now turn to the plaintiffs' amended opposition and statement of material facts in support thereof (docket entries 166 & 167). At page 2 of their amended opposition, they challenged the HUD approval of the application for demolition stating: "No approval should have been granted, because Puerto Rico Public Housing Authority (PRPHA) officials (Commonwealth defendants) never carried out the required residents' consultation of Las Gladiolas' residents in the development of the application for demolition. . . ." Amended Opposition (docket entry 166), at p. 2. The no consultation claim is based on the argument that neither the public hearings held from 2001 to 2005 on the agency's Annual Plan nor the February 22, 2005 assembly complied with federal law and regulations. The relevant federal regulations cited by plaintiffs will be discussed in detail below. The amended opposition makes repeated references to the lack of "meaningful discussions" at the hearings on the Annual Plans, the absence of feedback from PRPHA personnel, the limited information regarding the demolition of the Las Gladiolas complex contained in the Annual Plans, the failure of the PRPHA to consult all residents of Las Gladiolas in the development of the demolition application, the lack of PRPHA's evaluation of comments by Arca-

dio Aponte during the agency's annual Plan hearings, the approval of the demolition by the PRPHA's Board of Commissioners' Resolution before all resident and local government consultation has been completed and that "Las Gladiolas, Vive, Inc.," also referred to by plaintiffs as "Asociación de Residentes Gladiolas Vive" needed to be consulted under 42 U.S.C. § 1437p.

Before proceeding further, the Court must set the record straight with regard to the applicable federal regulations. Plaintiffs have raised arguments citing specific federal regulations which were not a part of the Code of Federal Regulations in effect during the relevant time period. The cut-off date is April 28, 2005, when the application for demolition was submitted by the PRPHA to HUD for authorization. The section 1437p consultation requirement had to be complied with during the development of the application.

The following regulations were incorrectly cited:

(1) Plaintiffs cite 24 C.F.R. § 970.9(a) effective November 24, 2006 to establish that a part of the residents' participation/consultation, "the PHA must also submit copies of any written comments submitted to the PHA and any evaluation that the PHA has made of the comments." It then argues at ¶ 48 of its amended opposition that "PRPHA did not make any evaluation as to comments made by plaintiff Arcadio Aponte–Rosario during the hearings held to discuss the Annual Plans." The applicable regulation is 24 C.F.R. § 970.8 which describes the contents of a PHA application for demolition to HUD, specifically subsection (e) that refers to "copies of any written comments which may have been submitted to the PHA and the PHA's evaluation of the comments."

(2) Plaintiffs refer to 24 C.F.R. § 970.9 effective November 24, 2006 which provides in relevant part that "[t]he PHA must provide with its application evidence that the application was developed in consultation with residents who will be affected by the proposed action, any resident organizations for the development, PHA-wide resident organizations that will be affected by the demolition or disposition, and the Resident Advisory Board (RAB)." The applicable regulation is 24 C.F.R. § 970.4(a) (2005 version) which reads: "HUD will not approve an application for demolition or disposition unless: (a) [t]he application has been developed in consultation with tenants of the project involved, any tenant organizations for the project, and any PHA-wide tenant organizations that will be affected by the demolition or disposition." The words "tenants of the project involved," "any tenant organization for the project" and "any PHA-wide tenant organizations" were substituted by "residents who will be affected by the proposed action," "any resident organizations for the development," and "PHA-wide resident organizations."

(3) The reference at paragraph 49 of the amended Opposition to Resolution No. HUD–577 issued by the PRPHA Board of Commissioners on April 15, 2004 approving the submission of the applications for demolition is discussed in light of the requirements set forth in 24 C.F.R. § 970.7(13) effective November 24, 2006. This regulation establishes that among the supporting information that must be included with an application for demolition or disposition is: "A copy of a resolution by the PHA's Board of Commissioners approving the specific demolition or disposition application ... for that development or developments or portions thereof. The resolution must be signed and dated after all resident and local government consultation has been completed." The applicable

regulation is 24 C.F.R. § 970.8(n), which includes, as part of the information required in the PHA application for demolition to HUD, "[a] copy of a resolution by the PHA's Board of Commissioners approving the application."

At paragraph 48 of the amended opposition, plaintiffs raise PRPHA's failure to make any evaluation of Mr. Arcadio Aponte's comments during the Annual Plan hearings. The regulation requires that the PHA includes copies of any written comments which may have been submitted to it and its evaluation of the same. The statements made by Mr. Arcadio Aponte against the demolition proposals included in the Annual Plans were not written comments but verbal expressions that are part of the transcript of such hearings. Additionally, there is no language in the application regulation that could be interpreted as making the PHA evaluation of any written comments mandatory. The argument is further weakened by the fact that plaintiff claimed, on the one hand, that resident participation in the annual public hearings was pro forma, worthless and irrelevant to the 1437p consultation requirement, yet protests that his input was not the subject of PHA evaluation.

Having cited an inapplicable federal regulation regarding PHA's Board of Commissioners approval of the demolition application, plaintiffs argue in ¶ 49 of their opposition that "[a]s their resolution was signed and dated well before the above mentioned February 22, 2005 meeting (referring to the residents' assembly), PRPHA violated 24 C.F.R. § 970.7 and HUD approved an application for demolition illegally, without the required resident consultation." This argument falls upon consideration of the applicable regulation, 24 C.F.R. § 970.8(n), which had no provision, as did the later version, that the

Board resolution be signed and dated after all consultation was completed.

■ It is within the framework of § 1437p and its related regulations in effect at the time of PRPHA's applications for demolition of Las Gladiolas housing project that we now evaluate plaintiffs' principal due process arguments, which is, as stated above, that the residents' consultation required by law and the regulations was not met by holding hearings for an uninterrupted period of five years—2001–2005 inclusive—on the PHA's Annual Plans and by holding an assembly of Gladiolas residents on February 22, 2005. For the reasons that follow, we conclude that plaintiffs' argument is meritless.

We start by noting that the proposed demolitions of Las Gladiolas buildings were included in each of the Annual Plans prepared by PRPHA for the years 2001, 2002, 2003, 2004 and 2005, with an indication in each of those Annual Plans of the demolition applications' planned submission date and the start date and end date for the demolitions. These milestones were informed during each year of that five-year period to all the residents of Puerto Rico's public housing projects, which of course included the residents of Las Gladiolas, as part of the drafts of those Annual Plans which were available for public inspections.

In addition, these proposed Annual Plans were discussed in public hearings which were notified in local newspapers and for which the PRPHA provided transportation to public housing residents so that they could assist. Attendance of Las Gladiolas residents to these public hearings, as highlighted above, was particularly significant during the discussion of the Annual Plans for the years 2001, 2002 and 2003 held on April 2, 2001, March 27, 2002 and March 28, 2003, and reflected the interests of those residents in being heard

and in being informed on the planned demolition of their housing units. The testimony of plaintiff Arcadio Aponte during these public hearings specially reflects how far the Las Gladiolas residents went in their efforts to be part of the consultation on the proposed demolition. As previously observed, Aponte testified during those hearings about two particular events that serve to demonstrate that the residents' endeavors to voice their position on the demolitions were not limited to their participation in the hearings on the Annual Plans for those five years and the general residents' assembly held on February 2005. As Aponte narrated, the Gladiolas residents were also involved in an investigation held by a legislative committee which rendered a report on the feasibility of the demolitions proposed and developed recommendations which were submitted to the PRPHA, and likewise participated in the submission to the PRPHA of photos and of alternative proposals prepared by UPR professors in support of their position that the Las Gladiolas structures could be modernized and rehabilitated.

Plaintiffs have repeatedly stated in their amended opposition that "[a]ll residents of Las Gladiolas and 'Asociación de Residentes Gladiolas Vive' needed to be consulted." See e.g. docket entry 166, at p. 22. The functions of a Resident Advisory Board and its constituents are defined in 42 U.S.C. § 1437c–1(e)(1) & (2) with respect to the submission of agency Annual Plans to the Secretary of Housing. Pursuant to subsection (e)(1), "each public housing agency shall establish one or more resident advisory boards ... the membership of which shall adequately reflect and represent the residents assisted by the public housing agency." Each Resident Advisory Board (RAB) so established shall make recommendations regarding the development of the public agency plan. Admittedly, the public housing agency had not established a RAB during the relevant time frame. The documents filed in support of summary judgment show that, as in other public housing projects, the Las Gladiolas I and II residential complex had Resident Councils throughout the relevant period. Section 1437r on public housing residents' management provides for the establishment of an elected Resident Council of a public housing project. "If there is no elected resident council, a majority of the households of the public housing project shall approve the establishment of a resident council to determine the feasibility of establishing a resident management corporation to manage the project." Id. The resident management corporation and the resident council may be the same organization. Given the requirements and functions of a RAB or a Resident Council, the organization identified as "Asociación de Residentes Gladiolas Vive" ("Gladiolas Vive") does not qualify as one or the other. HUD regulations in effect at the time, specifically 24 C.F.R. § 970.4(a), provided, however, that the application for demolition be developed "in consultation with ... any tenant organizations for the project...." Plaintiffs have provided nothing beyond the mention of "Gladiolas Vive" to establish its existence. They refer to their Exhibit 1, a sworn statement of plaintiff Arcadio Aponte, as lending support to their claim that this organization needs to be consulted. See Amended Opposing Statement of Material Facts (docket entry 167), at p. 15. This exhibit, a declaration under penalty of perjury signed by Arcadio Aponte on July 6, 2007, makes no reference to "Gladiolas Vive" or to any other tenant organization for that matter. The only mention in supporting documents of "Gladiolas Vive" appears in a written complaint against the PRPHA submitted at the HUD San Juan Field Office on November 3, 2005 by attorney Mirta Mor-

ales–Cruz, of the UPR School of Law Legal Aid Clinic, on behalf of Las Gladiolas resident Arcadio Aponte and the residents' association "Gladiolas Vive, Inc.," described as a "non-profit corporation incorporated under the laws of the Commonwealth of Puerto Rico and duly registered at the State Department of the Commonwealth of Puerto Rico. *See* p. 1. This November 3, 2005 administrative complaint was submitted after the filing of the PHA's application for demolition of April 28, 2005 for the demolition of the housing units at Las Gladiolas I and II. Plaintiffs have provided no evidence of when "Gladiolas Vive" was organized, what was its membership, and whether its members represent the residents of the project that will be affected by the demolition. Although the November 3, 2005 complaint was filed of behalf of plaintiff Arcadio Aponte and "Gladiolas Vive, Inc.," Mr. Aponte's own testimony during the hearings held on April 2, 2001 and March 27, 2002 on the agency's Annual Plans for the years 2001 and 2002 was given as a spokesperson for the organization identified by him as Residents in Action of Las Gladiolas condominium. In sum, plaintiffs have not provided any data in support of their claim that "Gladiolas Vive" had to be consulted regarding the development of the application for demolition by the PHA.

In contrast, defendants have provided documents that reflect consultation, at different times, with the Resident Council (Councils) of Las Gladiolas I and II. Exhibit 29 reflects the election process that culminated in the certification of the October 20, 20000 election of the Resident Council of Las Gladiolas I with the participation of 66 residents from 63 housing units, representing 21% of the community. The certification provides a detailed narrative of the entire process which had been preceded by a referendum where the residents endorsed the creation of a Resident Council for Las Gladiolas I since the housing project had a representative council for both Gladiolas I and II. A president, Efraín Torres, and a vice-president, Carmen Santiago, as well as lower level officers were elected to lead the Resident Council. The other record of an established Resident Council is the certification of the PRPHA acknowledging the Resident Council of Las Gladiolas I and II elected on April 27, 2004 until April 27, 2007. Exhibit 39C, the minutes of the election of this Resident Council, reflects that 146 of the 513 housing units participated, or 28.4% of the units. Residents Adela de León and Julio Rivera were elected as President and Vice–President, as well as a secretary, treasurer, and other minor officers. A review of Enclosure A1 of the demolition application includes an attendance sheet corresponding to the April 2, 2001 hearing on the agency's 2001 Annual Plan signed by Carmen Santiago who was the elected Vice–President of the Las Gladiolas I Resident Council established on October 20, 2000. That hearing was also attended by Carmen Jiménez, Felicita Agosto and Rosa Delgado, as members of the Board of Residents of Las Gladiolas. Adela de León, in turn, attended the public hearing on the 2002 Annual Plan as president of the Resident Council of Las Gladiolas, without specifying whether it was from Las Gladiolas I or II, and the public hearing on the 2005 Annual Plan as president of the elected Resident Council of Las Gladiolas I and II established on April 27, 2004 through April 27, 2007. Finally, Enclosure A–3 to Exhibit 4G reflects a meeting of the presidents of some Resident Councils, including Adela de León from Las Gladiolas, with PRPHA administrator Laboy held on March 11, 2002, where the 2002 Annual Plan (which included the proposed demolition of that housing project) was discussed. Hence, the evi-

dence on record supports the Commonwealth defendants' claim that, in accordance with the applicable regulations, the application for demolition of the Las Gladiolas housing development was developed in consultation with the then existing tenant organizations for that project.

The fact that the planned submission date of the demolition application to HUD was postponed year after year during a period of five years by PRPHA after each hearing on the agency's Annual Plans where the Las Gladiolas residents were notified of the discussion of the Plans, the demolition proposal was included in each Annual Plan and subjected to their examination, all residents had the opportunity to be heard, and multiple Las Gladiolas residents participated either as observers or deponents, is convincing proof that the application for demolition was developed before submission for HUD approval in consultation with Las Gladiolas' residents and the resident organizations that wished to participate.

The PRPHA went a step further, however, and convened an additional meeting on February 22, 2005 just with residents of Las Gladiolas to discuss the demolition application which was attended by 170 residents of the housing project. Although it is true that the minutes of this residents' assembly point to relocation as the main concern of the residents and demolition as the only cause of action proposed by PRPHA, said meeting did not take place in a vacuum. It was preceded, instead, by the participation of Las Gladiolas residents during the previous four years in hearings on the PRPHA's Annual Plans that included the Las Gladiolas I and II planned demolition. While the February 22, 2005 residents' assembly was held just two months before the actual submission on April 28, 2005 of the demolition application to HUD, nothing disproves the possibility that the viewpoints expressed during that meeting attended by a substantial number of Las Gladiolas' residents could have veered the proposed demolition off course.

█ In light of all the evidence on record which shows that Las Gladiolas residents were indeed consulted about the proposed demolition, plaintiffs suggest that because PRPHA in the end failed to follow the views of the residents who voiced their opinions against the proposed demolition, no consultation had actually taken place. In doing so, plaintiffs seem to disregard the fact that consultation is not equal to consensus, and consultation, after all, is what the law requires. *See* 42 U.S.C. § 1437p(b). While resident consultation remains an important part in the development of the application, it does not mean that the decisionmaking is, ultimately, in the side of the residents. When all is said and done, the PHA, after consultation, decides whether or not to proceed with the submission of the demolition application for HUD approval. If it does, such application must contain all the information spelled out in HUD's regulations. Defendants have shown here that there is no issue of material fact concerning the existence of resident consultation in the development of the application for demolition of the Las Gladiolas housing project before its submission to the HUD office, and it appears that said application included all the information compelled by the applicable regulations at the time of its submission. Nothing else was required. Accordingly, and for the reasons stated, plaintiffs' claim under 42 U.S.C. § 1437p(b)(2) based on the alleged failure by the PRPHA to consult all Las Gladiolas' residents during the development of the application for demolition of said public housing project is DISMISSED.

## II. Claim for *de facto* demolition.

Plaintiffs also claim that under 42 U.S.C. § 1437(p), complemented by 24 C.F.R. § 970.25 (2007), the Commonwealth defendants were prohibited from taking any action to demolish the Las Gladiolas public housing project prior to obtaining HUD's approval and had the obligation of maintaining all four buildings of the project in operating condition. *See* Amended Opposition (docket entry 166), at pp. 11–12. We start by noting that the continued vitality of plaintiffs' *statutory* cause of action for a *de facto* demolition or demolition by neglect, which they ground on a series of cases resolved under former 1437p(d), *see* docket entry 166, at p. 9, is somewhat uncertain given the elimination from the statute since 1998 of the language which required prior approval from HUD before the PHAs taking "any action" toward demolition of a project, and which was used by the courts as a basis to find that neglect of a development could rise to the level of a *de facto* demolition requiring prior HUD approval. *See e.g. Concerned Tenants Ass'n v. Pierce,* 685 F.Supp. 316 (D.Conn. 1988); *Tinsley v. Kemp,* 750 F.Supp. 1001 (W.D.Mo.1990); *Henry Horner Mothers Guild v. Chicago Housing Authority,* 780 F.Supp. 511 (N.D.Ill.1991): *Gómez v. Housing Authority of El Paso,* 805 F.Supp. 1363 (W.D.Texas 1992); *Vélez v. Cisneros,* 850 F.Supp. 1257 (E.D.Pa.1994). Section 1437p(d) read before 1998 as follows: "A public housing agency shall not take any action to demolish or dispose of a public housing project or a portion of a public housing project without obtaining the approval of the Secretary and satisfying the conditions specified in subsections (a) and (b) of this section." The Quality Housing and Work Responsibility Act of 1998, Public Law 105–276, at § 531(a), however, rewrote section 1437p in its entirety, and deleted this prohibition. But because similar language remained in the regulations in effect during the relevant period, *see* 24 C.F.R. § 970.12 (1988),[1] we now examine if the Commonwealth defendants did in fact *de facto* demolish the Las Gladiolas complex in violation of HUD's *regulations.*

■ In support of their *de facto* demolition claim, plaintiffs contend that the Commonwealth defendants, since at least the year 2000, have neglected the residential complex and caused its deterioration, *id.,* at p. 13, with the ulterior motive of letting the buildings fall apart to justify their demolition. *Id.* at p. 15. In support of their allegations, plaintiffs submit the sworn statement of Arcadio Aponte dated July 6, 2007 where he avers:

> Since 2001 the condition of the 4 towers has deteriorated rapidly. The vacated apartments are filled with debris, dirty water, and old clothes left there by the previous tenants. Overall, most apartments have broken sinks and water filtrations. The complex is experimenting an infestation of plagues that include rats, cockroaches, mosquitoes and bees. There has been almost no efforts to fumigate, only one, but it was only in a few apartments. The handrails are rotting, there is a deficient illumination of the premises (especially in common areas), and the storage rooms on every floor are filled with debris and dead animals. The parking area has no illumination and the grass around it is not trimmed as it should be. The sewers constantly overflow, the recreation areas for the children are completely abandoned and vandalized, and the basketball courts are semi-painted. The Com-

---

**1.** Section 970.12 provides, in its pertinent part: "A PHA may not take any action to demolish or dispose of a public housing pro- ject or a portion of a public housing project without obtaining HUD approval under this part."

munity Center for Las Gladiolas II is closed. Out of the ten (10) elevators only two (2) are partially working. It is getting worse and worse with the passing of time. It was not like this before they decided to implode the complex.

Plaintiffs also allege that the Commonwealth defendants' own Exhibit 3 to their Motion for Summary Judgment shows that extraordinary maintenance expenditures by PRPHA in Las Gladiolas dropped precipitously beginning in 1999, when according to testimony offered by PRPHA administrator Laboy during his deposition the demolition of the project started to be considered as an option.

The Aponte–Rosario sworn statement addresses conditions reportedly existing at the time that declarant executed his sworn statement on July 6, 2007. The references contained therein describe, for example, that "... The vacated apartments *are* filled with debris, dirty water ... The complex *is* experimenting an infestation of plagues that include rats, cockroaches ... handrails *are* rotting ... there *is* a deficient illumination ... storage rooms on every floor *are* filled with debris and dead animals ... parking area *has* no illumination and the grass around it *is* not trimmed ... sewers constantly *overflow*, the recreation areas for the children *are* completely abandoned ad vandalized, and the basketball courts *are* semi-painted ... Out of the ten (10) elevators only two (2) *are* partially working." (Emphasis ours.) There is no evidence that any of these conditions existed before the approval on February 2, 2006 of the PRPHA's request for demolition of Las Gladiolas I and II. The sworn statement, therefore, does not constitute counter-evidence to the motion for summary judgment which creates a genuine and material issue of fact that defeats summary stipulation.

Movant, on the other hand, has submitted evidence of the ordinary maintenance expenses for the period comprising Fiscal Year 1998 through Fiscal Year 2006 which establish a steady level of investment in the general maintenance of the entire complex. The expenditures reflect that there was no tendency to abandon upkeep of the residential complex. The fact that extraordinary expenses such as the upgrade of the elevators were more substantial in Fiscal Years 1998 and 2001 than in subsequent years does not support plaintiffs' claim that this is evidence of deliberate neglect. The nature of those extraordinary expenses reflect that they were intended to address special needs at a given point in time such as those itemized above. The total amount of maintenance expenses incurred from Fiscal Year 1998 through Fiscal Year 2006 was $13,437,658.74, which was not only regularly invested but also significant. For the reasons stated, plaintiffs claim under 24 C.F.R. § 970.12 (1988) for the *de facto* demolition of the Las Gladiolas housing project without prior HUD approval is also DISMISSED.

We need go no further. Having disposed of all of plaintiffs' claims against the Commonwealth defendants, their request for the entry of summary judgment (**docket entry 161**) is GRANTED. Accordingly, partial judgment will be entered DISMISSING all claims against the Commonwealth defendants.

SO ORDERED.

### PARTIAL JUDGMENT

For the reasons stated in our Opinion and Order of this same date, IT IS ORDERED AND ADJUDGED that all claims against the Commonwealth defendants be and are hereby DISMISSED.

SO ORDERED AND ADJUDGED.